## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUSAN SANDLER,

        *Plaintiff*,

    v.

ANTONY BLINKEN,
Secretary of State,

        *Defendant*.

No. 21-cv-2226 (DLF)

## <u>MEMORANDUM OPINION</u>

Plaintiff Susan Sandler brings this employment discrimination action against Antony Blinken in his official capacity as Secretary of State. Before the Court are the Secretary's Partial Motion to Dismiss and Summary Judgment, Dkt. 10, and Sandler's Motion for Discovery, Dkt. 12. For the reasons that follow, the Court will grant the Secretary's motion part and deny it in part and deny Sandler's discovery motion as moot.

## I.    BACKGROUND[1]

Sandler is a Jewish woman and a former employee of the Department of State who held the position of Deputy Director of the Office of the Special Envoy for Holocaust Issues (the Office). Am. Compl. at 1–2, ¶¶ 6, 15, Dkt. 8. Due to an August 2018 motorcycle accident, she suffers headaches, post-traumatic cervical, thoracic, and lumbar sacral strain syndrome, and pain

---

[1] In resolving the Secretary's motion to dismiss, the Court has assumed the truth of the material factual allegations in the complaint, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

in her extremities. *Id.* ¶ 1.  Her spouse also suffered from Parkinson's Disease and passed away in January 2020. *Id.* ¶¶ 10–11, 13.

Sandler's responsibilities as Deputy Director included communication with various national and international agencies, nongovernmental organizations, and other public and private sector contacts. *Id.* ¶ 15.  In response to an increased workload during a Department hiring freeze from 2017 to 2019, Sandler requested additional staffing from her then-supervisor, Special Envoy for Holocaust Issues, Thomas Yazdgerdi, but he denied her requests. *Id.* ¶¶ 16, 21, 23–24.

In March 2019, Sandler informed Yazdgerdi that she was taking leave to care for her spouse and to seek her own medical treatment, and ultimately she remained on leave until April 2020. *Id.* ¶¶ 29–30.  Sandler alleges that Yazdgerdi complained to human resources about her ability to perform her job, became "angry and upset" and "yelled" at her, complained to other Department employees about her medical appointments and absences, and joked that the Office was a "medical ward." *Id.* ¶¶ 32–35, 46–48, 51.  She further alleges that Yazdgerdi called her a "Jewish mother" on many occasions. *Id.* ¶¶ 52–55.  Sandler met with human resources employees in the Bureau of European and Eurasian Affairs (EUR), but her concerns were not addressed. *Id.* ¶¶ 37–38, 56–57. In August 2019, Cherrie Daniels replaced Yazdgerdi and allegedly also complained about Sandler's absences. *Id.* ¶¶ 17, 59, 64.

In addition to meeting with EUR Human Resources, Sandler contacted the Department's Disability/Reasonable Accommodations Division (Accommodations Division) in March 2019. *Id.* ¶ 40.  She requested reasonable accommodations for her disabilities, including the ability to telework, an ergonomic chair, other ergonomic workstation modifications, and office lighting. *Id.* ¶¶ 40–42.  She also sought a flexible work schedule. *Id.* at 2.  The Department's Domestic Environment Health and Safety unit concluded that Sandler needed ergonomic equipment, *id.* ¶ 68,

but the equipment was not available through the time of Sandler's retirement in October 2020, *id.* ¶ 44. Sandler also alleges all her requests to telework for periods between August 2019 and April 2020 were denied. *Id.* ¶ 70. The Department's Accommodations Division denied her November 2019 request to telework because she needed to access classified material in-person at her office. *Id.* ¶ 74.

In January 2020, Sandler's paid leave balance ran out and she entered leave without pay status. *Id.* ¶¶ 86–87. During that time, she earned no income. *Id.* In March 2020, Sandler learned that the State Department had expanded access to telework due to the Covid-19 pandemic. *Id.* ¶ 91. She alleges this guidance had been "deliberately withheld" from her by her supervisor and the EUR Human Resources. *Id.* ¶ 94. The State Department also denied her Weather and Safety Leave, which permitted "employees to work from home, or be paid if they could not telework." *Id.* ¶¶ 91, 99.

On or about April 6, 2020, Sandler also requested a "State Department-configured" laptop so she could access the Department IT system "more comfortably and efficiently" while teleworking. *Id.* ¶ 108. These laptops had "department-specific connection software" that would have eased Sandler's pain while working by making it less physically intensive for her to access work materials. *Id.* ¶ 109. Her request was denied. *Id.* ¶ 110.

Sandler was given permission to telework and ended her leave on April 13, 2020. *Id.* ¶ 100. Upon her return to work, Sandler discovered that her Department email account and "nearly 10 years of historical files," including emails, had been deleted during her medical leave. *Id.* ¶ 103. Sandler alleges these files were deleted because no one notified the IT department that she was on leave and had not left the State Department. *Id.* ¶ 104. She was unable to fully restore her records. *Id.* ¶ 106.

From April 2020 until October 2020, Sandler continued to inquire about the status of her requests for accommodations. *Id.* ¶ 116. Ultimately, the Department installed an "electric desk 'riser'" in August 2020. *Id.* On September 9, 2020, Sandler went to her office and found no other accommodations had been installed. *Id.* ¶ 117. As a result, Sandler "felt she had no choice but to retire," which she did on October 31, 2020. *Id.* Sandler alleges that her "early retirement" was in effect a constructive discharge resulting in the loss of monetary benefits. *Id.* ¶ 118.

Finally, Sandler alleges that in October 2020 she learned that an "adverse personnel action" had been placed in her personnel file in February 2020, resulting in her not receiving a pay step increase. *Id.* ¶ 119. She further asserts that her second line supervisor would not provide her with an explanation for this action and suggested she "move on." *Id.* ¶¶ 122–123.

Sandler filed a formal complaint of discrimination with the Department's Office of Civil Rights on November 27, 2019. Def.'s Partial Mot. to Dismiss Ex. A, Dkt. 10-4.[2] The Civil Rights Office issued a final agency decision on May 27, 2021. *Id.* Ex. C, Dkt. 10-6. Sandler later filed her initial complaint and served it in September 2021. Compl., Dkt. 1. The defendant timely filed a motion to dismiss on November 2, 2021. Def.'s Partial Mot. to Dismiss, Dkt. 6. Plaintiff then filed an Amended Complaint on November 22, 2021. Am. Compl.

---

[2] The Court may consider Sandler's EEO documents. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (considering "the pleadings and undisputed documents in the record" while reaching the merits on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (taking judicial notice of informal and formal administrative complaints on a motion to dismiss); *Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) ("A plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (internal quotation marks and alteration omitted)).

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat'l*, 642 F.3d at 1139 (internal quotation marks omitted).  Nonetheless, the burden is on the plaintiff to establish subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  And the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### B.    Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount

to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Finally, a Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.   ANALYSIS

The Secretary moves to dismiss parts of Sandler's complaint on various grounds. He argues that several of Sandler's theories of liability should be dismissed for failure to exhaust her administrative remedies. *See* Def.'s Mem. of P. & A. at 12–14. 19–20, 26–28, 36, Dkt. 10-2. He

also argues that Counts I, III, IV, and VI[3] should be dismissed under Rule 12(b)(6) for failure to state a claim.  *Id.* at 8–12, 20–26, 28–36.  For the following reasons, the Court will grant the motion in part and dismiss Counts I, III, IV, and VI in full and Count II in part.

### A.    Exhaustion

A federal employee bringing claims under Title VII and the Rehabilitation Act must timely exhaust administrative remedies before filing suit in federal district court.  *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 33 (D.C. Cir. 2014); *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *see also* 29 U.S.C. § 794a(a)(1).  The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted).  It limits the scope of an employee's complaint in federal court "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations."  *Id.* (citation omitted).  A claim is "reasonably related" to an EEOC charge if, "[a]t a minimum" it would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (internal quotation marks and citation omitted).[4]

---

[3] The Complaint does not contain a Count V.

[4] The Court notes there is a split in this District over whether the Supreme Court's holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), controls over the "like or reasonably related" standard established in *Park*.  71 F.3d at 907; *see also Howard v. Kerry*, 85 F. Supp. 3d 428, 433 (D.D.C. 2015) ("[I]t is unclear how broadly *Morgan*'s holding cuts—and whether, for instance, that holding requires that discrete discriminatory acts alleged in timely filed charges must also have—individually—been submitted for a prior (and timely) discussion with an EEO counselor.").  The D.C. Circuit has not settled this issue.  *See Webster v. Del Toro*, No. 21-5040, 2022 WL 4350112, at *5 (D.C. Cir. Sept. 20, 2022) ("We have twice reserved the question whether *Park* survives *Morgan*.  We do the same here . . . ."

The administrative exhaustion requirement can be either jurisdictional or non-jurisdictional.  For Title VII claims, a "plaintiff's . . . failure to exhaust her administrative remedies does not deprive the Court of jurisdiction."  *Morris v. Off. of Pers. Mgmt.*, No. 20-0016, 2021 WL 2188143, at *4 (D.D.C. May 28, 2021); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019); *Koch v. Walter*, 934 F. Supp. 2d 261, 269 (D.D.C. 2013).  In such cases, the Court evaluates exhaustion arguments as a motion to dismiss for failure to state a claim.  *Carter v. Carson*, 241 F. Supp. 3d 191, 195 (D.D.C. 2017) ("Motions to dismiss for failure to exhaust administrative remedies are properly addressed as motions to dismiss for failure to state a claim." (citation omitted)).  To do so, the Court "may consider a plaintiff's EEO complaint and notice of charge without converting [the] motion to dismiss into a motion for summary judgment because such records are public documents of which a court may take judicial notice."  *Spence v. Wolf*, No. 19-2919, 2020 WL 6075727, at *3 (D.D.C. Oct. 15, 2020) (internal quotation marks omitted).  In addition, because "untimely exhaustion of administrative remedies is an affirmative defense" when it would not result in a jurisdictional defect, *Bowden*, 106 F.3d at 437, "it is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies," *Carter*, 241 F. Supp. 3d at 195 (alteration and citation omitted).

In contrast, this circuit considers failure to administratively exhaust a Rehabilitation Act by failing to pursue a particular claim before the agency a jurisdictional defect.  *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Morris*, 2021 WL 2188143, at *3; *Williams v. Perdue*, 2020 WL 1892045, at *4 (D.D.C. Apr. 16, 2020); *Williams v. Brennan*, 320 F. Supp. 3d 122, 128 (D.D.C. 2018); *McIver v. Mattis*, 318 F. Supp. 3d 245, 250 (D.D.C. 2018).  In these cases, the

---

(citations omitted)).  Accordingly, the Court continues to apply the D.C. Circuit's "like or reasonably related" standard set out in *Park.  See, e.g.*, *N.Y. Republican State Comm. v. SEC*, 70 F. Supp. 3d 362, 371 (D.D.C. 2014), *aff'd*, 799 F.3d 1126 (D.C. Cir. 2015).

defendant's exhaustion argument is construed as a motion to dismiss for lack of subject-matter jurisdiction.  Because failure to exhaust would preclude jurisdiction, "the plaintiff bears the burden of alleging facts sufficient to establish that . . . she exhausted administrative remedies."  *Brennan*, 320 F. Supp. 3d at 127.

The Secretary argues that Sandler cannot proceed on several of her theories of liability—leave without pay (Counts I, III, and VI), constructive discharge (Counts I, III, and VI), failure to provide a laptop (Count II), and flexible work schedule (Count II)—because she did not properly exhaust her administrative remedies.  Def.'s Mem. at 12–14, 19–20, 26–27, 36.  The Court will address each of her legal theories in turn.

### 1.   *Leave Without Pay Theory* (Counts I, III, and VI)

In Counts I, III, and VI, Sandler alleges, among other things, that the Secretary violated the Rehabilitation Act and Title VII by placing her on leave without pay.  *See* Am. Compl. ¶¶ 128, 148, 164.  Although Sandler did not expressly allege this theory in her EEO complaint, *see* Def.'s Mot. Ex. A, or amend her EEO complaint to include it, *see id.* Ex. B, Dkt. 10-5, the question remains whether Sandler's leave without pay theory is "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations."  *Park*, 71 F.3d at 907.  Because Sandler's leave without pay theory is "reasonably related" to other claims alleged in her EEO complaint, it does not fail on exhaustion grounds.

In her EEO complaint, Sandler alleged both telework and workstation claims that the Secretary does not dispute were properly exhausted.  *See* Def.'s Mem. at 1.  Her EEO Investigative Affidavit further alleged that she "had to deplete all annual and sick leave balances—over 1200 hours" and was "on [leave without pay] for [approximately] 3 months" because the Secretary denied her telework and workstation modifications.  Pl.'s Opp'n Ex. A, at 2, Dkt. 13-1.  Based on

these allegations, "it is reasonable to assume that the EEOC's investigation would have addressed the consequences" of Sandler's exhausted telework and workstation claims. *Tridico v. District of Columbia*, 130 F. Supp. 3d 17, 25 (D.D.C. 2015).   Thus, her leave without pay theory is "reasonably related to" the allegations in her EEO complaint. *See id.* at 24–25 (allowing plaintiff to plead additional retaliatory acts where those acts "resulted from" an exhausted retaliation claim in plaintiff's EEOC charge).

The link between Sandler's claims before this Court and her allegations before the EEOC distinguishes this case from those on which the Secretary relies.   For example, in *Marcelus*, "nothing in the EEOC Charge even referenced [the plaintiff] making past complaints about discrimination[.]" *Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008).   Similarly, in *Hunt*, nothing "within the EEOC claim form . . . indicate[d] that [the plaintiff] was alleging gender discrimination[.]" *Hunt v. D.C. Dep't of Corr.*, 41 F. Supp. 2d 31, 36 (D.D.C. 1999).   Here, in contrast, before the EEOC Sandler not only alleged that she had used her annual and sick leave because of the Secretary's denial of her requested accommodations, but she also requested an "[a]udit of her hours" to confirm "how much leave she has used from every category and how much she has remaining before her leave runs out."   Def.'s Mot. Ex. A, at 5.   And she sought "re-credited leave" as a remedy for her time spent preparing the complaint. *Id.*   The Secretary's exhaustion argument therefore falls short.

### 2.   *Constructive Discharge Theory* (Counts I, III, and VI)

In contrast, Sandler's EEO Complaint did not suffice to put the defendant on notice of her constructive discharge theory in Counts I, III, and VI.   The only mention of any possible constructive discharge claim in Sandler's EEO complaint or its amendments appears in a declaration that Sandler submitted in support of her second request to add allegations to her EEO

complaint.  There, she stated that in September 2020, she "submitted [her] retirement application because of unnecessary stress . . . unreasonable work demands; . . . lack of office support and back-up; overuse of computer equipment; and inappropriate pressure on [her] and [her] colleagues to return to in-person work in the State Department building."  Def.'s Mot. Ex. B at 14.  To the extent this adequately alleged a constructive discharge theory before the EEOC, however, Sandler effectively abandoned any such theory by failing to object to the EEOC's "Accepted and (Second) Amended Allegations" letter.[5]  *See Bozgoz v. James*, No. 19-239, 2020 WL 4732085, at *7 (D.D.C. Aug. 14, 2020).

Sandler also has not exhausted her constructive discharge theory because it is not reasonably "like or related to" her exhausted claims.  *See Cannon v. Paulson*, 531 F. Supp. 2d 1, 6 (D.D.C. 2008).  Sandler disagrees, arguing that her alleged constructive discharge "arose out of the State Department's actions of not accommodating her disabilities."  Pl.'s Opp'n at 13, Dkt. 13. But "[c]ourts in this Circuit" have rejected this very theory of exhaustion, "reject[ing] attempts . . . to piggy-back termination claims that are the 'culmination' of plaintiffs' properly exhausted hostile work environment or discrimination claims."[6]  *Terveer v. Billington*, 34 F. Supp. 3d 100, 113

---

[5] Not only did the EEOC not amend Sandler's complaint to include a constructive discharge claim, it did not even mention any such theory.  Def.'s Mot. Ex. B at 9-11.  Its letter instructed Sandler to notify the EEOC "within five calendar days" if she believed it had "not correctly identified the circumstances surrounding her recent allegations of discrimination."  *Id.* at 11.  This Court has repeatedly found that in such cases "where the plaintiff did not object [to an agency's Notice of Acceptance letter], . . . the plaintiff effectively abandoned any claims that were not listed, and only the events in the Notice of Acceptance letter were administratively exhausted."  *Bozgoz*, 2020 WL 4732085, at *7 (collecting cases); *see also Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 96 (D.D.C. 2019).

[6] Under this caselaw, Sandler's constructive discharge claim is not sufficiently like or related to any of her properly exhausted claims, including her discrimination, her hostile work environment, or even her retaliation claims.  As explained below, *infra* sections III.B.2, III.B.4, Sandler's retaliation claims are merely restatements of her failure-to-accommodate (and discrimination) claims.

(D.D.C. 2014); *see also Cannon*, 531 F. Supp. 2d at 7 ("[O]ther courts have held that claims of constructive discharge are not sufficiently similar to claims of discrimination under the 'like or related to' test to proceed if one of the claims was not raised at the administrative level."). Because Sandler did not exhaust her constructive discharge theory, the Court will dismiss it in Counts I and III under Rule 12(b)(1) for lack of subject-matter jurisdiction and in Count VI under Rule 12(b)(6) for failure to state a claim.[7]

### 3.    *Failure to Provide a Laptop Theory* (Count II)

Sandler properly exhausted before the EEOC her allegations under the Rehabilitation Act that the Secretary failed to accommodate her by failing to provide her with a State Department laptop. *See* Def.'s Mem. at 19; Am. Compl. at 2. While Sandler did not expressly include this claim in her EEO complaint, she did allege in her EEO complaint that she "lacked Departmental intranet access" and was "sent documents for requesting telework to [her] private computer that were solely accessible through Departmental software systems[.]" *See* Def.'s Mot. Ex. C, at 7. It is reasonable to assume the scope of an EEO investigation into these intranet and software access issues would have included Sandler's requests for State Department technology. *See Tennant v. District of Columbia*, No. 19-2949, 2020 WL 4464505, at *11 (D.D.C. Aug. 3, 2020) ("The question is . . . whether the factual allegations in the EEOC charge would have set the EEOC down the path to 'uncover[ing] evidence relevant to [plaintiff's] . . . [other] claims' in any resulting investigation." (quoting *Haynes*, 924 F.3d at 528)). Because the Secretary had "an opportunity to resolve [the] claim administratively before [the employee] file[d] her complaint in district court,"

---

[7] Even if Sandler had exhausted her administrative remedies in Count VI with respect to any Title VII retaliation claim based on a constructive discharge theory, the Court would still dismiss the claim under Rule 12(b)(6) for the reasons stated below, *infra* section III.B.4.

*Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (citation and internal quotation marks omitted), Sandler properly exhausted her failure to provide a laptop theory in Count II.

### 4.   *Flexible Work Schedule Theory* (Count II)

Sandler has not shown that she exhausted her claim under the Rehabilitation Act that the Secretary improperly denied her request for a flexible work schedule.   Although her EEO complaint alleged that she "needed to leave work urgently due to a medical emergency at home," Def.'s Mot. Ex. A, at 4, this single passing reference did not put the Secretary on notice of Sandler's more specific allegation that the Department failed to accommodate her request for a flexible work schedule, *see Carroll v. England*, 321 F. Supp. 2d 58, 66 n.3 (D.D.C. 2004) (rejecting plaintiff's argument that a "brief mention" of chronic back pain in her EEOC complaint excused failure to exhaust claim that employer failed to provide an ergonomic chair); *Webster*, 2022 WL 4350112 at *5 (rejecting "proposition that a plaintiff has exhausted any possible Title VII claim lurking in the administrative record that neither was raised as, nor is 'like or reasonably related to,' the charged violations").   Because Sandler did not "giv[e] the charged party notice of the claim and narrow[] the issues for prompt adjudication and decision," *Park*, 71 F.3d at 907, her flexible work schedule theory, stated under the Rehabilitation Act, will be dismissed for lack of subject-matter jurisdiction.

### B.   **Failure to State a Claim**

### 1.   *Discrimination Claim Under the Rehabilitation Act* (Count I)

In Count I, Sandler alleges that the Department discriminated against her because of her disability in violation of the Rehabilitation Act.   To prevail, Sandler must adequately plead: "(1) that [she] had a disability within the meaning of the Act, (2) that [she] was 'otherwise qualified' for the position with or without reasonable accommodation, and (3) that [she] suffered

an adverse employment action solely because of her disability." *Drasek*, 121 F. Supp. 3d at 160. At the third step, Sandler alleges that the Department took the following adverse employment actions against her: "[1] treat[ed] her differently from others outside her protected class; [2] . . . fail[ed] to provide reasonable accommodations for her disabilities; [3] . . . refus[ed] to allow [her] to telework; [4] . . . plac[ed] her on Leave Without Pay (LWOP) status from January 2020 to April 2020, and/or [5] . . . constructively discharge[ed] [her] in October 2020, by refusing to accommodate her." Am. Compl. ¶ 128. As discussed above, *supra* section III.A.2, Sandler has failed to exhaust her fifth theory of liability. The Court will dismiss the remainder of Count I for failure to state a claim because Sandler has conceded her first theory of liability and her remaining theories of liability are duplicative of her failure to accommodate claim in Count II.

By failing to address the Secretary's contrary argument, *see* Def.'s Mem. at 11–12; Pl.'s Opp'n at 9–13, Sandler has conceded that the Secretary did not "treat[] her differently from others outside her protected class," Am. Compl. ¶ 128. *See* Local Civ. R. 7(b); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citation omitted) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *see also Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997). What is more, "[a]s a matter of judicial economy, courts should dismiss [a] claim[]" if it is duplicative of another claim in the same suit. *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) (citation omitted). Here, three of the theories that Sandler offers to prove her discrimination claim in Count I are duplicative of her failure-to-accommodate claim in Count II.

"Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Id.*  In Count I, Sandler alleges that the Secretary discriminated against her in violation of the Rehabilitation Act by "failing to provide reasonable accommodations for her disabilities" and "refusing to allow [her] to telework." Am. Compl. ¶¶ 124–131.  Similarly, in Count II, Sandler alleges that the Department violated the Rehabilitation Act by "fail[ing] to accommodate her disability." *See id.* ¶¶ 132–141.  Both of these claims are evaluated under identical legal standards.  *See Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 118 (D.D.C. 2007) ("A failure-to-accommodate claim under the ADA is derived from the statute's definition of discrimination, which includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'" (quoting 42 U.S.C. § 12112(b)(5)(A))); *Matos v. DeVos*, 317 F. Supp. 3d 489, 496 n.5 (D.D.C. 2018) ("[B]ecause the Rehabilitation Act and the ADA have similar standards for the most part, courts generally use cases interpreting the two statutes interchangeably.").  They also stem from the same factual allegations—namely that the Secretary improperly denied Sandler's requests for various reasonable accommodations, including telework.[8]  *See* Am. Compl. ¶¶ 40 (describing Sandler's request for "the ability to telework from home" as a "reasonable accommodation"), 63–72 (describing "continued" "discrimination and retaliation" based on repeated denials of Sandler's requests for accommodations).  Because

---

[8] Moreover, even if Sandler alleged a non-duplicative claim that the Secretary denied her telework *outside* of the reasonable accommodations process, the denial of telework, standing alone, would not constitute an actionable adverse employment action under the Rehabilitation Act.  *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) ("Courts in this and other jurisdictions have repeatedly held that denial of a telework arrangement on its own does not constitute an adverse employment action.").

15

Sandler's failure to accommodate theories in Count I are duplicative of Count II, the Court will dismiss them under Rule 12(b)(6).

Likewise, Sandler's theory in Count I that she that she suffered an adverse employment action when the Department placed her on leave without pay status, Compl. ¶ 128, is duplicative of Count II.  In the Department of State, leave without pay is a voluntary status granted upon an employee's written request.  Def.'s Partial Mot. to Dismiss at 15 (describing volume 3, section 3511 of the Department of State's Foreign Affairs Manual for personnel).  Voluntary actions are generally not considered adverse employment actions that can support a discrimination claim unless the employee can show that the action was not truly voluntary.  *See Aliotta v. Bair*, 614 F.3d 556, 566–67 (D.C. Cir. 2010) (whether a buyout was an adverse employment action turned on whether it was truly voluntary); *Allard v. Holder*, 840 F. Supp. 2d 269, 276–77 (D.D.C. 2012) (voluntary withdrawal from a management program not an adverse employment action unless the employee's "decision was involuntary").

To get around this, Sandler alleges that she was actually "forced" into leave without pay status, Pl.'s Opp'n at 10–11 n.9, 16, 18, because "[i]n January 2020, [her] paid leave balances ran out," and because "in November 2019, . . . [she was informed] that she could no longer telework," Am. Compl. ¶ 86.  This does not show that Sandler's decision to take leave without pay status was involuntary.  Instead, it merely restates her claim that the Secretary improperly denied her request for telework.  As explained above, Sandler's Count I theory that the Secretary denied her request to telework is duplicative of her Count II failure-to-accommodate claim.  For these reasons, the Court will dismiss for failure to state a claim Sandler's theory that she suffered an adverse employment action when she entered leave without pay status.

2.      *Retaliation Claim Under the Rehabilitation Act* (Count III)

In Count III, Sandler claims that the Secretary retaliated against her for engaging in activity protected under the Rehabilitation Act.  *See* Am. Compl. ¶¶ 142–52.  To establish a claim for retaliation under the Rehabilitation Act, which mirrors the legal standard under the ADA, a plaintiff must satisfy three elements: she must show (1) that "she 'engaged in protected activity;'" (2) that "she 'was subjected to adverse action by' the defendant;" and (3) that there was "a causal connection 'between the adverse action and the protected activity.'"  *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 40 (D.D.C. 2008) (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007)) (noting that "[t]he same test applies under the Rehabilitation Act" and the ADA (citation omitted)).  An employer's action is actionably adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Such actions "are not limited to discriminatory actions that affect the terms and conditions of employment," *id.* (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 64), but the act must be "materially adverse" in an objective sense, *Chambers v. District of Columbia*, 35 F.4th 870, 876 (D.C. Cir. 2022) (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 67–68).

In Count III, Sandler alleges that the Department retaliated against her by taking the following adverse actions: "[1] failing to provide reasonable accommodations for her disabilities, [2] refusing to allow Sandler to telework, . . . [3] placing her on leave without pay status, and/or [4] . . . constructively discharging [her], by refusing to accommodate her."[9]  *See* Am. Compl.

---

[9] Because Sandler failed to respond to the Secretary's argument for dismissing her claim that the Secretary "illegally and maliciously falsif[ied] her personnel record" and "den[ied] [her] timely [pay] step increase," *see* Def.'s Mem. at 23; Am. Compl. ¶ 148, the Court finds that, for Counts

¶ 148.  As explained above, Sandler failed to properly exhaust her constructive discharge theory. *See supra* section III.A.2.

The remaining actions Sandler identifies are essentially restatements of Sandler's failure-to-accommodate claim in Count II.  In Count II, she alleges that the Department "failed to accommodate her disability," *see* Am. Compl. ¶¶ 136–37, because it denied her requests for telework, workstation modifications, and a specially-configured laptop, *see id.* ¶¶ 40–44, 74, 108–12, 132.  Similarly, her first two theories of liability in Count III are simply failures to provide reasonable accommodations.  As to the third, as explained above, Sandler's theory that she was forced into leave without pay status is at its core also a claim based on the Secretary's failure to accommodate.  This is because Sandler alleges that she was "forced" into leave without pay status by the Secretary's denial of her request to telework.  *See id.* ¶ 148; *supra* section III.B.1.

The Court will dismiss all of these theories because the denial of a reasonable accommodation request cannot by itself constitute an adverse action supporting a claim of retaliation based on that request.  *See Harris v. Chao*, 257 F. Supp. 3d 67, 89 n.28 (D.D.C. 2017) ("Cases in this jurisdiction have held that the denial of a request for reasonable accommodation cannot serve as the nucleus of both a discrimination claim and a retaliation claim under the Rehabilitation Act." (citations omitted)); *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) (explaining that if denying a reasonable accommodation request could itself support a claim of retaliation, "then every failure-to-accommodate claim would be doubled").  Because Sandler does not identify some "distinct retaliatory act" besides denial of her requests for accommodation, she cannot bootstrap herself into a retaliation claim by claiming that denial of her requests for

---

III, IV, and VI, that argument has been conceded.  *See* Local Civ. R. 7(b); *see also Hopkins*, 284 F. Supp. 2d at 25.

accommodations was itself an act of retaliation.  *Harris*, 257 F. Supp. 3d at 89 n.28.  Thus, none of the theories of liability Sandler alleges in support of her retaliation claim are cognizable, and the Court will dismiss Count III.

###### 3.    *Hostile Work Environment Claim* (Count IV)

Count IV of Sandler's complaint alleges that the Department created a hostile work environment in violation of Title VII and the ADEA.[10]  *See* Am. Compl. ¶¶ 153–61.  To prevail on a hostile work environment theory, Sandler must plausibly allege that Department officials "subjected [her] to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create[d] an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Because Title VII is not a "general civility code," the officials' conduct "must be [so] extreme [as] to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).  In assessing whether a hostile work environment exists, "courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Richardson v. Petasis*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (quoting *Harris*, 510 U.S at 23).  Finally, a plaintiff must "establish that the allegedly harassing conduct . . . was based on a protected characteristic,"

---

[10] In her opposition, Sandler purports to raise an additional, retaliatory hostile environment claim in Count IV.  *See* Pl.'s Opp'n at 20.  However, "it is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss."  *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014).  The Court therefore will not address this claim.

or that there is "some linkage between the hostile behavior and [her] membership in a protected class." *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (citation omitted).

Here, Sandler argues that her supervisor, and other Department officials, created a hostile work environment by: (1) deleting her work files and email account and subsequently failing to restore her access to either; (2) failing to order her ergonomic equipment; (3) informing Sandler via email that he would tell Human Resources she could no longer do her job; (4) complaining about her medical appointments; (5) preventing the completion of Sandler's FMLA application until she completed "non-essential, administrative tasks"; (6) "angrily" complaining that Sandler "had been out too long" during her medical leave and requesting that she find a "permanent solution to [her] medical illnesses"; (7) stating that his office was a "medical ward" due to Sandler's medical leave; (8) making derogatory comments about other employees with disabilities; (9) calling Sandler a "Jewish mother countless times between 2016 and 2019"; (10) scheduling Sandler to work hours in excess of her "physician's prescribed limits"; (11) denying her telework and laptop requests; (12) placing her on leave without pay status; and (13) withholding from Sandler work-from-home guidance that was made available to other employees. Am. Compl. ¶¶ 30, 33–35, 44, 46, 48–49, 54, 65, 74, 86, 91, 94, 110, 158.

This conduct is not "sufficiently severe or pervasive to alter the conditions of [Sandler's] employment and create a hostile work environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21). Although the offensive comments from Sandler's supervisors, as alleged, were no doubt unpleasant, "mere offensive utterance[s]" do not create a hostile work environment. *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 210 (D.D.C. 2017) (alteration in original) (quoting *Faragher*, 524 U.S. at 787–88); *see also Nurridden v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("Plaintiff's allegations of disparaging remarks . . . and other negative

comments do not sufficiently demonstrate a significant level of offensiveness.").  Far more offensive conduct than the acts alleged here fall short of a hostile work environment.  *See Pauling*, 286 F. Supp. 3d at 209–10 (concluding no hostile work environment was created by a supervisor "yelling 'that b*tch'" in reference to another employee); *see also Stewart v. Evans*, 275 F.3d 1126, 1131–33 (D.C. Cir. 2002) (holding that a phone call in which a higher-ranked official called the plaintiff "a f[***]ing idiot" did not create a hostile work environment).  For there to be a hostile work environment, the plaintiff must allege more severe conduct, such as frequent and extended abusive statements and interference with medical care.  *See, e.g.*, *Woodberry v. Berry*, No. 18-cv-3081, 2020 WL 3035055, at *5–6 (D.D.C. June 5, 2020).  Sandler does not clear that bar here.

Furthermore, allegations that Department officials assigned Sandler tasks, denied requests for accommodation, and communicated with her regarding her performance constitute "work-related actions by supervisors," which "typically" are not "sufficient for a hostile work environment claim."  *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (citation omitted); *see also Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 91 (D.D.C. 2019) (noting that "this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim" (citation omitted)).  Allegations of repeated name-calling and angry outbursts, as well as the loss of past records, are also insufficient. *See Faragher*, 524 U.S. at 788 (internal quotation marks omitted) (explaining that "ordinary tribulations of the workplace, such as the sporadic use of abusive language and gender-related jokes" do not constitute a hostile work environment); *see also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 106–07 (D.D.C. 2005) (allegation that "defendant destroyed records of travel vouchers" was insufficient).

In sum, the alleged actions are not sufficiently "severe or pervasive" to constitute a hostile work environment. *See Baloch*, 550 F.3d at 1201. The Court will therefore grant the Secretary's motion to dismiss Sandler's hostile work environment claim.

4.   *Retaliation Claim Under Title VII* (Count VI)

Count VI alleges retaliation in violation of Title VII. Title VII prohibits employers from discriminating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation." 42 U.S.C. § 2000e-3(a). To adequately plead a retaliation claim under Title VII, a plaintiff "must show (1) that [the] employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). Sandler identifies the following actions by the Secretary as retaliatory: "denial of her pay increase[,] being placed on a leave without pay status from January 2020 to April 2020[,] and . . . constructive discharge in October 2020." Am. Compl. ¶ 164.

The Court will dismiss all of Sandler's theories in support of her retaliation claim. First, she conceded her argument that she was improperly denied a pay step increase. *See supra* section III.B.2. Second, she entered leave without pay status because the Secretary denied her telework accommodation request, an action that standing alone cannot constitute a retaliatory adverse action. *See id*. Finally, Sandler failed to exhaust her constructive discharge claim.[11] *See supra* section III.A.2.

_____

[11] And even if Sandler had exhausted her constructive discharge theory, she has not adequately alleged a claim. "[T]he facts necessary to prove a hostile work environment are a subset of those necessary to prove . . . constructive discharge." *Steele v. Schafer*, 535 F.3d 689, 694 (D.C. Cir. 2008) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)). Sandler has failed to allege either. *See supra* section III.B.3.

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motion to dismiss in part and denies it in part.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 29, 2022